**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

UNITED STATES OF AMERICA      :
     :
     :
     v.      :      **CRIMINAL NUMBER 25-418**
     :
     :
AIDAN GETCHIUS      :

**DEFENDANT'S SENTENCING MEMORANDUM**

An impulsive blip in an otherwise law-abiding life; youthful frustration spilled over and then quickly retracted. Aidan Getchius, through counsel, respectfully submits this memorandum to aid the Court in sentencing. The parties agree that this is the rare federal criminal case where a prison sentence is not necessary and have entered into a plea pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B) recommending a term of probation. We invite the Court to join that consensus. Mr. Getchius was 19 at the time of this rash, unthinking decision, but he understands and owns the consequences of his actions completely. He is deeply remorseful. Mr. Getchius is now in college and studying finance. This conviction may spell an impediment to Mr. Getchius finding work in future, and federal probation is no minor restriction on liberty. *See Gall v. United States,* 552 U.S. 38, 48 (2007). A two-year term of probation is sufficient but not greater than necessary to meet the statutory factors outlined 18 U.S.C. § 3553(a), *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.

## I.      INTRODUCTION

The facts are not in dispute. Two years ago, sitting in his mother's house in Strasburg, Pennsylvania, Mr. Getchius thumbed a frustrated direct message on X (formerly Twitter) to the United States Tennis Association (USTA) suggesting falsely that he was at the US Open with a

bomb that would go off in an hour. Upon information and belief, he quickly thought better of it and tried to delete the message. But USTA security saw the message and performed a protective sweep at the stadium. There was no disruption in tennis. Authorities assumed, and to his credit Mr. Getchius would soon acknowledge, the message was sent in the heat of distress over a sports bet gone wrong. In the ensuing months, law enforcement investigated Mr. Getchius's social media accounts and did not find any persistent threats of violence or any other suggestion to causing harm at the U.S. Open.

But Mr. Getchius understands that while isolated, what felt like an innocuous headbang from a weaponless teenager hundreds of miles away fell through into the real world. He is an avid sports fan. He overwhelmingly regrets the harm he caused. And Mr. Getchius now realizes that his own vulnerabilities (explored elsewhere) may make the sting of losing a wager (or even watching his favorite teams and players come up short) feel like freefall—more so than for other dedicated sports fans. He is on notice of this fact. Over the last two years, he has calibrated a healthier relationship with sports. He is now happily occupied with other things—college, new social relationships, and planning for a career in finance. He owns his actions hook, line, and sinker. And he has decided to resolve this case by way of information, saving the government the time and effort of presenting his case to a grand jury.

## II.    MR. GETCHIUS'S PERSONAL HISTORY

Aidan Getchius was born in 2004 in Lancaster, Pennsylvania, to a fiercely loving single mother—Trisha Sullivan. Ms. Sullivan raised Aidan in Strasburg, Pennsylvania, near her own parents, and worked long hours at an insurance company to provide for him. When Aidan was young, Ms. Sullivan was in a long-term relationship with a man named Mark, who played a fatherlike role in Aidan's life. Mark and Trisha separated when Aidan was 12, but Ms. Sullivan

worked hard to surround Aidan with positive role models. Ms. Sullivan devoted her life to raising Aidan, and Mr. Getchius recalls a happy childhood, always feeling safe and supported at home.

As Aidan entered adolescence, he became a devoted sports fan. He did not have an easy time socially and spent much of his free time watching sports alone and playing video games. School was not unbearable. Aidan formed some close friendships. But by late middle school, Aidan was bullied on a near-daily basis. Ms. Sullivan decided to enroll Aidan at Pennsylvania Leadership Charter School, a high school that Aidan attended online. His high school years overlapped almost perfectly with the COVID-19 pandemic—so Aidan did not feel like he was missing out socially, and online classes let Aidan focus on academics while saving him what had developed into not insignificant social anxiety.

After graduation, Mr. Getchius worked for his grandfather at Don's Collectibles, a sports memorabilia store in Strasburg with an active eBay following. Aidan would design eBay listings and help customers in the store. He then worked for DoorDash and set about applying for college. Meanwhile, Aidan had reconnected with some acquaintances from middle school who had gotten into sports betting. There were websites or applications, these friends had discovered, that allowed people aged 18 and older to bet on sports, while industry mainstays like FanDuel and DraftKings required betters to be over 21. Aidan joined the fun and a small group text thread ensued. Aidan felt comfortable being social in this forum. Talk sports, put in small wagers, live together through the results. At some point, however, Aidan noticed a friend or two having what felt like extreme reactions to losing bets. It was hyperbole; the parlance of the boys in the chat. "I am going to this or that . . . , if my team loses," a friend would text. But it also became the norm. As Mr. Getchius understands it, this is how the rough script for his threat to the U.S. Open entered his mind on the day question. This does not minimize Mr. Getchius's actions or detract from his remorse; rather

this observation shows Mr. Getchius's insight into the origin of his actions and his ability to forestall such impulses in the future.

Mr. Getchius received a target letter related to the instant allegations and immediately took every step in his power to resolve the case expeditiously and with full accounting of his own actions. He admitted to the offense conduct and explained the unabridged backstory. He has been above reproach on pretrial release, incurring not a single infraction. Mr. Getchius still lives with his mother in Strasburg but is assembling the social tools (and savings) to one day move out on his own. He has just finished his freshman year at Millersville University, bringing home a 3.24 GPA in the first semester. As noted in the Presentence Report, this offense is an aberration, a complete anomaly in Mr. Getchius's law-abiding life. He is young and full of promise.

### III.   APPLICATION OF THE REMAINING 18 U.S.C. § 3553(a) FACTORS TO MR. GETCHIUS'S CASE.

A careful analysis of the factors set forth in 18 U.S.C. § 3553(a)—with which the Court is familiar—dictates that a two-year probation term is a sufficient but not greater than necessary sentence to meet the statutory factors outlined 18 U.S.C. § 3553(a), *United States v. Booker*, 543 U.S. 220 (2005), and its progeny.

Mr. Getchius's history and characteristics, as discussed above and considered in light of § 3553(a)(1), bring context and chronology to the transgression at issue in this case. This is his only criminal case, his only arrest.

Such a sentence also reflects the seriousness of the offense, promotes respect for the law, and provides just punishment. Even the mere possibility of incarceration has altered Mr. Getchius's life. He is deeply ashamed of his newfound status as a felon and knows that this development will pose an obstacle to his professional pursuits. The defense respectfully contends that there is little penological purpose to incarcerating Mr. Getchius at this juncture. Mr. Getchius is studying hard

4

to be a contributing member of society. This conviction will be a headwind in Aidan's life for years to come.

A probation sentence would not create an unwarranted sentence disparity. According to United States Sentencing Commission data, a full 36% of defendants in Mr. Getchius's sentencing guideline position under § 2A6.1, Final Offense Level 10, Criminal History Category I, received a non-custodial sentence. https://jsin.ussc.gov/analytics/saw.dll?Dashboard (last accessed May 18, 2026). For the reasons explicated above, defense counsel respectfully contends that this is not a jail case, that Mr. Getchius should join the many defendants in his guideline position that are punished with non-custodial sentences. The government agrees.

Mr. Getchius will take maximum advantage of all education and vocational opportunities around him whether he is in custody, or on probation or supervised release.

It is the rare federal case that presents the circumstances for a non-custodial sentence. This is one of them. While sentencing departures may be a figment of recent memory, the age-related departure under USSG §5H1.1 and the departure for aberrant behavior under USSG §5K2.20 would have both squarely applied to this case. The Court can, and should, take these factors into account in the form of a variance. Mr. Getchius is overwhelmingly sorry for his actions, however isolated and short-lived. He has known this day would be coming for the last two years. He has complied with every court-imposed obligation. His life is back on track. His future is bright.

**WHEREFORE**, the defense prays that the Court will impose a two-year probation sentence.

Respectfully submitted,

*/s/ Jeremy Isard*
JEREMY ISARD
Assistant Federal Defender

5

## CERTIFICATE OF SERVICE

I, Jeremy Isard, Assistant Federal Defender, Federal Community Defender Office for the Eastern District of Pennsylvania, hereby certify that I have served a copy of Defendant's Sentencing Memorandum via the Court's Electronic Filing (ECF) system, which sent notification to Josh Davison, Assistant United States Attorney.

/s/ Jeremy Isard
JEREMY ISARD
Assistant Federal Defender

DATE: May 18, 2026